[Civ. · No. 3452. Second Appellate District, Division Two.—January 27, 1922.]

## OLIVER L. PEZEL, Respondent, v. I. A. YEREX, Appellant.

[1] JUDGMENTS—PERSONS SECONDARILY LIABLE.—Where a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without fraud or collusion, will be conclusive against him whether he appeared or not, since under such circumstances he has the same means and advantages of controverting the claim as if he were the real and nominal party on the record.

[2] ID.—WARRANTY OF TITLE — APPLICABILITY OF PRINCIPLE.—The principle of the conclusiveness of judgments as against persons

---

1. Conclusiveness of judgment against persons not parties of record, note, 2 **Am. St. Rep.** 876.

responsible over is applicable to cases arising between the warrantor of title, express or implied, and the warrantee, and it applies to cases of warranty of title of personal property as well as to those of warranty of title to land.

[3] ID.—ACTION FOR BREACH OF WARRANTY OF TITLE—PENDENCY OF ACTION—NOTIFICATION TO DEFEND—SUFFICIENCY OF NOTICE TO DEFENDANT'S VENDOR.—A vendor of personal property, who warranted the title, is sufficiently notified of the pendency of an action brought against his vendee for damages for breach of warranty of title upon a resale, so as to make the judgment in such action binding upon him, where such vendee addressed two written communications to him advising him of his liability if the plaintiff prevailed and also unequivocally inviting him to take any action in the suit that he or his counsel might deem advisable or appropriate.

[4] ID.—SCOPE OF JUDGMENT.—A warrantor who has been duly notified to come in and defend an action for breach of warranty of title to personal property cannot be bound by a judgment beyond what was in controversy and determined in the suit, nor is the judgment evidence of matters not within the scope of the warranty.

[5] ID.—ACTION FOR BREACH OF WARRANTY—PLEADING—TITLE OF DEFENDANT'S WARRANTOR—SUFFICIENCY OF COMPLAINT.—A complaint in an action for breach of warranty of title to personal property which alleges that the defendant had no title in or to or right to sell the property, while it literally refers to the condition of the title as of the date when the property was sold to the plaintiff, such complaint may, when considered with facts and certain legal presumptions that may be legitimately deduced from such facts, put in issue the title as it came to the defendant from his warrantor.

[6] ID.—BREACH OF WARRANTY — DAMAGES — ATTORNEYS' FEES. — A vendor can be held liable for the breach of his own particular contract of warranty only, and for the breach thereof he should not be held to a greater liability than that contemplated by section 3312 of the Civil Code, even though his case may not fall within the strict letter of that section, and the use of the word "costs" in such section means taxable costs and does not include attorneys' fees.

APPEAL from a judgment of the Superior Court of Ventura County. Merle J. Rogers, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

56 Cal. App.—20

Harry K. Sargent for Appellant.

Fred Horowitz and Walter E. Barry for Respondent.

FINLAYSON, P. J.—This is an action to recover damages for the breach of a warranty of title in the sale of an automobile by defendant to plaintiff. Judgment passed for plaintiff and defendant appeals.

Defendant sold the automobile to plaintiff on February 1, 1919. The complaint alleges, and the answer admits, that by the contract of sale the defendant warranted that he had a good and unencumbered title. On March 1, 1919, plaintiff sold the machine to one E. S. Faxon, and warranted his title thereto to be good and unencumbered. On September 19, 1919, Faxon brought an action against the plaintiff here to recover damages for an alleged breach of the latter's warranty of title. In his complaint in that action Faxon alleged: "That defendant O. L. Pezel [the plaintiff here] had, in fact, no title in or to or right to sell said Ford automobile, but the same belonged to the Aetna Insurance Company, who thereafter, on the 9th day of August, 1919, demanded possession of the same from plaintiff [E. S. Faxon], and that by reason thereof the plaintiff was compelled to, and did, deliver said Ford automobile up to said Aetna Insurance Company, and said Ford automobile was thereby and by reason thereof wholly lost to said plaintiff, and said plaintiff was thereby and by reason thereof deprived of the possession of said automobile." In due time the action thus brought by Faxon was tried, the court found the allegations of his complaint to be true, and entered a judgment against the defendant there, the plaintiff in the present action, for the sum of $525 damages and $8 as costs, making a total of $533.

On September 20, 1919, which was the day following the filing of the complaint in the action by Faxon against the plaintiff here, the latter mailed to the defendant in the present action a letter which was received in due course of mail. In this letter plaintiff, after reminding defendant that the latter had sold the machine to the former on February 1, 1919, gave notice to defendant that he, the plaintiff, had resold the automobile to Faxon on March 1, 1919; that the Aetna Insurance Company, as the insurer of one J. A.

Murphy, had demanded a delivery of the machine to it on the ground that it had been stolen from Murphy; and that Faxon, on September 29, 1919, had brought an action in the superior court for Ventura County against plaintiff on the latter's warranty of title. The letter states the purpose and nature of the action thus brought by Faxon, and concludes as follows: "You are therefore notified that in the event the said E. S. Faxon is successful in his suit against me, that I shall institute suit against you to recover the amount recovered against me. Of course, these two trials means additional court costs and attorneys fees, while I believe that a good settlement could be made at this time. I would advise that you secure the services of an attorney and take such action as seems appropriate in the action against me." The next day, October 1, 1919, plaintiff's attorney mailed to defendant at Ventura, and the latter received in due course of mail, a letter which, after reciting the fact that Faxon had brought an action against this plaintiff to recover damages for the alleged breach of the latter's warranty of title, and after stating that if Faxon should be successful in his action against this plaintiff it will be incumbent upon the latter to sue the defendant here, and he in turn his vendor, and that each successive suit will mean additional costs and attorneys' fees, concluded as follows: "I would therefore suggest that you consult your attorney with a view of negotiating a settlement and obviate the additional costs as well as to take such action as he deems advisable in the pending suit. Will you kindly advise me of your decision in the matter." Defendant made no attempt to defend the action that had been brought by Faxon against this plaintiff. Indeed, defendant seems to have paid no attention whatever to either of the above-mentioned letters.

At the trial of the present action plaintiff, over defendant's objection, put in evidence the judgment-roll in the action that had been brought against him by Faxon. The admission of this judgment-roll is now assigned as error.

[1] It is well settled that where a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without fraud or collusion, will be con-

clusive against him whether he appeared or not. Under such circumstances the person responsible over is no longer regarded as a stranger, because he has the right to appear and defend the action and has the same means and advantages of controverting the claim as if he were the real and nominal party on the record. (15 R. C. L., p. 1017.) [2] This principle of the conclusiveness of judgments as against persons responsible over is applicable to cases arising between the warrantor of title, express or implied, and the warrantee. That is, a judgment against a warrantee, in an action of which the warrantor was given proper notice, is conclusive against the latter, in the absence of fraud or collusion. The principle applies to cases of warranty of title to personal property as well as to those of warranty of title to land. (*Thurston* v. *Spratt,* 52 Me. 202; *Drennan* v. *Bunn,* 124 Ill. 175 [7 Am. St. Rep. 354, 16 N. E. 100]; 15 R. C. L., p. 1020.)

[3] The principal ground of appellant's objection to the introduction of the judgment-roll in the action by Faxon against the respondent here is addressed to the alleged insufficiency of the notice afforded by either of the two above-mentioned letters. It is strenuously insisted that, to make the judgment conclusive evidence against the person who is responsible over, the notice to him of the pendency of the action must contain an express request to come in and defend. The decisions upon the question as to the sufficiency of such notices are varied, extending from those which hold that mere notice of the pendency of the action will suffice (of which *Drennan* v. *Bunn, supra,* is an example), to those holding that the defendant in the action must give unequivocal, express, and certain notice to the person who is responsible over, requiring the latter to defend the suit, or giving him an opportunity to do so. *Consolidated etc. Co.* v. *Bradley,* 171 Mass. 127 [68 Am. St. Rep. 409, 50 N. E. 464], a case involving a warranty of title to *land,* is a fair example of those cases which hold that the warrantor must be requested to come in and defend the action, or be given an opportunity to do so. Our attention has not been called to any decision in this state that is directly in point. We shall assume, however, that in this state the rule is every whit as strict as that announced by the Massachusetts court in *Consolidated etc. Co.* v. *Bradley,*

*supra.* There the court employed the following language in announcing the rule: "Whatever may be the form of such a notice, we think that, under the circumstances in which it is given, it should call upon the person notified to come in and defend the suit, *or should offer him an opportunity of doing so. . . .* The decisions of different courts in this country are not uniform upon the requirements of such a notice, but the weight of authority in this commonwealth is that the notice must be such in substance as to give the person notified information that he is called upon to come in and defend the suit, *or that he is given an opportunity to do so,* and that if he does not defend it he will be held responsible for the result." (Italics ours.) See, also, *Hovey* v. *Smith,* 22 Mich. 170, 177, and 15 R. C. L., p. 1018. We think that the notices given in the instant case meet the most exacting requirements. Though in neither of the two letters was this defendant requested, in so many words, to come in and defend the suit which Faxon had brought against the plaintiff here, each letter advised this defendant that he would be liable if Faxon prevailed in his suit, and in each letter defendant was, in substance and effect, offered an opportunity to come in and defend the action. In each letter defendant is advised to consult counsel. In one letter he is urged to take such action in the suit brought by Faxon as seems "appropriate"; in the other he is advised to take such action "in the pending suit" as his attorney "deems advisable." By these letters the defendant was unequivocally invited to take any action in the pending suit that he or his counsel might deem appropriate or advisible. By this broad invitation defendant clearly was given an opportunity to come in and defend. More than that was not necessary. (See *Boston* v. *Worthington,* 10 Gray (Mass.), 496 [71 Am. Dec. 678].)

[4] It next is claimed that the complaint filed by Faxon did not put in issue the title that was warranted by this defendant when he sold the automobile to the plaintiff here on February 1, 1919. Without doubt, a warrantor who has been duly notified to come in and defend cannot be bound by a judgment beyond what was in controversy and determined in the suit. He is notified to defend against the claim which is set up and to be tried, and nothing more. Nor is the judgment evidence of matters not within the scope

of his warranty. The judgment is, however, if due notice be given, evidence of matters put in issue and decided and which are within the scope of the warranty made by the one who is responsible over.

[5] Faxon's complaint, it will be recalled, alleges that his vendor, the plaintiff in the present action, had "no title in or to or right to sell said Ford automobile." This, of course, literally refers to the condition of the title as of March 1, 1919, the date when plaintiff sold the machine to Faxon; and therefore Faxon's complaint, on its face, put in issue the title as of March 1, 1919. But it does not necessarily follow that that title was not the self-same title that was warranted by the defendant here when, on February 1, 1919, he sold the machine to this plaintiff. When considered in connection with certain facts and certain legal presumptions that legitimately arise out of those facts, Faxon's complaint does, we think, put in issue the title as it came to this plaintiff when defendant sold the car to him on February 1, 1919. Plaintiff is the immediate vendee of the defendant in the present action. There is no evidence that plaintiff sold the car to a third person prior to his sale to Faxon; nor, on the other hand, is there any *direct* evidence that he did not make any such sale. But though there is no direct evidence that plaintiff had not sold the car, or encumbered his title thereto, before he made the sale to Faxon, there is a legal presumption that his sale to the latter was "fair," and that in selling the car to Faxon he committed no "wrong." It is a *prima facie* presumption that "a person is innocent of crime or wrong"; also that "private transactions have been fair and regular." (Code Civ. Proc., sec. 1963, subds. 1, 19.) We think that by the aid of these legal presumptions, plaintiff made out a *prima facie* showing that the title that was warranted by this defendant when he sold the car to plaintiff was the very title which the latter conveyed to Faxon, and, therefore, was the same title that was put in issue in the action brought by Faxon. By each of the two letters mailed to him the defendant here was notified, in substance and effect, that the action brought by Faxon put in issue the title that this plaintiff had deraigned from his vendor, the defendant here.

[6] What has already been said by us is a sufficient answer to appellant's claim that the lower court erred in denying his motion for a nonsuit, and likewise will suffice to dispose of every other point made by appellant save one, which is that the judgment is erroneous in so far as it includes attorneys' fees incurred by the respondent in defending the action that was brought against him by Faxon—attorneys' fees which the lower court found amounted to the sum of $150. We think that this last point is well taken, and that the judgment must be modified accordingly.

Section 3312 of the Civil Code reads: "The detriment caused by the breach of a warranty of the title of personal property sold is deemed to be the value thereof to the buyer, when he is deprived of its possession, together with any *costs* which he has become liable to pay in an action brought for the property by the true owner." (Italics ours.) If, instead of selling the car to Faxon, respondent had retained it, and if, while it thus was retained by him, he had been sued for its possession by the true owner, the Aetna Insurance Company, and had been deprived of its possession in that action, the case would have fallen squarely within the letter of section 3312, and the respondent here would have been entitled to recover the "costs" incurred by him in that action, but not attorneys' fees. The term "costs" has a well-defined legal meaning, and includes only taxable costs, that is, those expenses which are incurred by parties in prosecuting or defending actions or proceedings and which may be taxed against the losing party. (*Morgan* v. *Haley,* 107 Va. 331 [122 Am. St. Rep. 846, 13 Ann. Cas. 204, 13 L. R. A. (N. S.) 732, 58 S. E. 564].) But, says respondent, section 3312 is not applicable here, because he is not suing for damages caused by being deprived of the possession of the automobile, but is suing for damages incurred in being compelled to defend the suit brought against him by Faxon. Regardless of the particular damages to which he may be entitled in order to compensate him for his injury, the fact remains that plaintiff's right of action grows out of defendant's breach of the latter's warranty of title. If a vendee's title to personal property fails, he must look to his own vendor, from whom he purchased and to whom he paid the consideration. He can recover damages for a breach of the contract of warranty that his immediate

vendor made with him, and for none other. A warranty of title to a chattel does not run with the article sold. Where, as here, there have been successive sales, with successive warranties, and a breach arises from an outstanding title existing at the time of the sale by the original vendor, each sale is a separate transaction. Each vendor is liable for his own contract, and to the extent thereof, but not otherwise. And a vendee, though he in his turn has become a vendor, and as such has incurred a liability for the breach of his warranty, cannot enlarge his immediate vendor's obligation beyond that fixed by law. (*Smith* v. *Williams,* 117 Ga. 783 [97 Am. St. Rep. 220, 45 S. E. 394].) If the last of several successive vendees should recover a judgment against his immediate vendor for breach of warranty of title, and if each of the remaining vendees should successfully sue his immediate vendor, it is evident that if, in the suits thus brought by the successive vendees, each could recover attorneys' fees, and if such attorneys' fees could be carried forward so as to be finally paid by the original vendor, such fees might aggregate an amount which would assume an importance out of all proportion to the value of the article that was the subject of the successive sales and warranties.

Our conclusion is that a vendor can be held liable for the breach of his own particular contract of warranty only, and that for the breach of that contract he should not be held to a greater liability than that contemplated by section 3312, even though his case may not fall within the strict letter of that section. By the use of the word "costs" in that code section, which, as we have shown, means taxable costs, we think it clear that the legislature did not intend that attorneys' fees should ever be a part of the damages recoverable for the breach of a warranty of title to personal property.

The judgment is modified by striking therefrom the sum of "$683.00" and inserting in lieu thereof the sum of "$533.00." As thus modified, the judgment will stand affirmed.

Works, J., and Craig, J., concurred.

A .petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 27, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, 'J., *pro tem.*, was acting.