[Civ. No. 15012. Third Dist. Feb. 17, 1976.]

BENDIX-WESTINGHOUSE AUTOMOTIVE AIR BRAKE
COMPANY, Cross-complainant and Appellant, v.
SWAN RUBBER COMPANY et al.,
Cross-defendant and Respondent.

■

## COUNSEL

Carroll, Burdick & McDonough and Justs N. Karlsons for Cross-complainant and Appellant.

Sedgwick, Detert, Moran & Arnold, Farella, Braun & Martel, Victor J. Haydel III, Douglas M. Moore, Jr., and Wayne D. Brazil for Cross-defendants and Respondents.

## OPINION

**PARAS, J.**—As a result of injuries sustained by plaintiffs when their automobile collided with a truck, plaintiffs filed suit against the truck driver and his employer, Trails Trucking Company, claiming negligence. On January 30, 1968, plaintiffs amended their complaint by adding San Jose Autocar White Company (hereinafter "Autocar") as a third defendant. Autocar was sued on breach of warranty and products liability theories for allegedly installing a faulty air brake hose on the truck.

On February 5, 1968, Autocar filed a cross-complaint against Bendix-Westinghouse Automotive Air Brake Company (hereinafter "Bendix") and alleged that the faulty brake hose had been manufactured and supplied to Autocar by Bendix. Plaintiffs then served Bendix as a fictitious defendant, and Bendix filed an answer to the amended complaint (and later answered the Autocar cross-complaint). During a pretrial conference held on September 30, 1968, Bendix indicated to the court that Swan Rubber Company (hereinafter "Swan") should possibly be made a party, because it might have initially manufactured the allegedly faulty air brake hose and sold it to Bendix; Bendix was "fairly sure but not positive" of this. The pretrial conference order stated: " . . . *If such Swan Rubber Company is to be made a party to the action proceedings will be filed and served on or before October 31, 1968;* otherwise the responsibility, if any, of Swan Rubber Company will be determined by independent action." (Italics in original.)

On October 31, 1968, Bendix filed a notice of motion for leave to file a cross-complaint for indemnity against Swan. After a hearing and favorable ruling on November 12, 1968, this cross-complaint was filed on November 14, 1968 and was served on Swan on December 17, 1968.

Likewise on October 31, 1968, Bendix mailed Swan a letter notifying it of the pending litigation. The letter stated that the lawsuit involved an allegedly faulty air brake hose; that certain markings on the hose revealed that it was distributed by Bendix; and that a lengthy investigation of the age of the hose and of the nearly obliterated markings thereon revealed that only Swan could have been its manufacturer and supplier. Bendix indicated further that it was entitled to indemnity from Swan and demanded such indemnity, along with an immediate assumption of the defense of the pending action. The letter additionally stated that the trial was set for January 7, 1969, but assured Swan that it would not be prejudiced by taking over the defense because Bendix had already done a substantial amount of the preparation for trial.

Swan replied on November 4, 1968, declining to assume the defense.

Subsequently, Swan moved the court for an order severing Bendix' cross-complaint against it on the basis that Swan had conducted no independent investigation or discovery, and it would be impossible for Swan to conduct discovery and adequately prepare in time for trial (even though the trial date had in the meantime been reset for Mar. 11, 1969). The court ordered the severance. Plaintiffs' case proceeded to trial on March 11, 1969, and a jury verdict was entered against Bendix. In answer to a special interrogatory, the jury made a finding that there had been a manufacturing defect in the brake hose.

Before trial of the severed indemnity action, a final pretrial conference order was issued therein, containing the following statement:

"It will be understood that the matter will be tried upon the issues defined by the pleadings without regard to the results of the action between the original plaintiffs and the cross-complainant herein."

The cross-complaint went to trial. There was much debate between counsel for Bendix and Swan and the court as to whether Bendix' letter of October 31, 1968, and Swan's subsequent failure to defend meant that Swan was now bound by the jury's special finding in the previous trial. Standing literally by its earlier order, the trial court allowed the issue of the existence of a manufacturing defect in the air brake hose to be relitigated. The jury returned a verdict in favor of Swan, and judgment was entered accordingly. Bendix appeals, contending (1) that the trial court erroneously decided as a matter of law that Bendix failed to give

seasonable (timely) notice to Swan of a pending lawsuit involving Bendix; and (2) that even if the question of seasonable notice could be decided as a matter of law, the judge erroneously decided that Bendix' notice to Swan was untimely.

\* \* \* \* \*

■ We deem one fact to be dispositive of this case. Bendix' letter of October 31, 1968, which purportedly "vouched in" Swan, does not qualify as a "vouching in" letter under California Uniform Commercial Code section 2607, subdivision (5)(a). The question of seasonable notification is therefore moot, because it can be a factor only if the letter is substantively adequate.

California Uniform Commercial Code section 2607, subdivision (5)(a) reads as follows:

"(5) Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over

"(a) He may give his seller written notice of the litigation. If the notice states that the seller may come in and defend *and that if the seller does not do so he will be bound* in any action against him by his buyer *by any determination of fact common to the two litigations,* then unless the seller after seasonable receipt of the notice does come in and defend he is so bound." (Italics added.)

The notification letter of October 31, 1968, states that "We [Bendix] therefore make demand upon you [Swan] . . . that you immediately . . . assume the defense of these actions." Thus the first requirement of section 2607, subdivision (5)(a), appears to have been met. But although the letter explains emphatically that Bendix claims indemnity from Swan, it does not state expressly that unless Swan assumes the defense, it will be bound "by any determination of fact common to the two litigations" in any subsequent action of Bendix against Swan. This is fatal to Bendix' case.

There are no California cases that have construed section 2607, subdivision (5)(a). However, there are California cases on the common

law concept of vouching in embodied in section 2607, subdivision (5)(a) which we may use in its interpretation. (See 1 Commercial Law (Cont.Ed.Bar 1966) § 1.32, p. 17.) *Sampson* v. *Ohleyer* (1863) 22 Cal. 200 involved an action for ejectment against a tenant. Addressing itself to the issue of indemnity, the court stated that it was clearly the duty of the indemnitee to give full notice of the pending litigation to the indemnitor, to tell the indemnitor what the indemnitee requires of him, and to indicate the consequences which may follow if the indemnitor neglects to defend the action. (*Id.,* at p. 208.) In *Pezel* v. *Yerex* (1922) 56 Cal.App. 304 [205 P. 475], the court stated that the indemnitee's notice must inform the indemnitor that if he does not defend the action, " 'he will be held responsible for the result.' " (*Id.,* at p. 309.) The court also noted that the rule in California is strict with respect to the prerequisites of a valid notice of indemnification. (Cf. *Liberty Mutual Insurance Company* v. *Byerly* (E.D.Wis. 1969) 299 F.Supp. 213, 217, citing *Sampson* and *Pezel.*)

There is disagreement among jurisdictions as to what is required in a vouching in letter. In an annotation in 73 A.L.R.2d 504, 518-524, California is asserted to be a jurisdiction which requires statements in the letter covering *both* the request to defend and the consequences of failure to defend. (*Id.,* at pp. 519-521.)

The committee on the Continuing Education of the Bar states that in most cases one letter cannot double as both a breach of warranty letter (§ 2607, subd. (3)(a)) and a vouching in letter (§ 2607, subd. (5)(a)); that the vouching in letter must meet far more stringent statutory requirements than the breach of warranty letter; and that the vouching in letter "must invite the manufacturer to come in and defend, and warn him that if he does not he will be bound by adjudications of fact in the pending action pertinent to a later suit by the retailer against him." (1 Commercial Law (Cont.Ed.Bar 1966) § 6.173, p. 293.)

With this concept we agree. Normally a litigant is not bound by an adjudication made in a proceeding in which he did not participate. This is fundamental. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 234, p. 3367 et seq.) If he is to be so bound, as by application of California Uniform Commercial Code section 2607, subdivision (5)(a),

due process demands that the literal requirement of such an exception be strictly obeyed.

The judgment is therefore affirmed.

Janes, Acting P. J., and Evans, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 15, 1976.